**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOAO CONTROL & MONITORING SYSTEMS, LLC, Plaintiff, | ) | |
| v. | ) | C.A. No. 12-cv-1479 (GMS) |
| FORD MOTOR COMPANY, Defendant. | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

On November 15, 2012, the plaintiff, Joao Control & Monitoring Systems, LLC ("Joao Control"), filed suit against the defendant, Ford Motor Company ("Ford"), alleging infringement of U.S. Patent Nos. 6,542,076 ("the '076 Patent"), 6,542,077 ("the '077 Patent"), and 7,397,363 ("the '363 Patent") (collectively, "the patents-in-suit"). (D.I. 1.) On December 21, 2012, Ford filed a Motion to Transfer (D.I. 10), pursuant to 28 U.S.C. § 1404(a), seeking to transfer the above-captioned action to the Eastern District of Michigan. For the reasons that follow, the court will grant Ford's motion.

## II. BACKGROUND

As described in the Complaint and the parties' briefing in connection with the instant motion, Joao Control is a limited liability company organized and existing under the laws of the State of Delaware and maintains its principal place of business in Yonkers, New York. (D.I. 1 at ¶ 2.) Joao Control's principal place of business address is listed as the residence of the named inventor of the patents-in-suit, Raymond Anthony Joao. (D.I. 11 at 3.) Ford is a corporation also

organized and existing under the laws of the State of Delaware, but maintains its principal place of business in Dearborn, Michigan. (*Id.* at ¶ 3.)

This patent infringement action involves hardware and software technology. (*Id.* at ¶¶ 6.) Specifically, the plaintiff alleges that Ford owns, operates, advertises, controls, sells, and otherwise provides hardware and software comprising "control apparatuses for vehicle systems," including the "Ford SYNC system, particularly as this system is used to access and utilize personalized online statement of vehicle status (via the 'Vehicle Health Report'), to access directions from a home computer (via the "Send to SYNC" and "SYNC Destinations" Systems and Services), to access Bluetooth and Sirius audio streaming, and to obtain energy response (via the 'Ford SYNC 911 Assist' System and Services) . . . and associated hardware and software. (*Id.*) Joao Control alleges that Ford has infringed the patents-in-suit by making, using, providing, offering to sell, and selling (directly or through intermediaries), and includes claims for willful infringement and induced infringement. (*Id.* at ¶¶ 6-25.)

## III. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. The provision affords district courts with "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). In this examination, the court undertakes a two-step inquiry to determine whether a motion to transfer should be granted. First, the court must establish whether the action is one that could have originally been brought in the proposed transferee forum. *See Shutte v. Armco Steel Corp.*, 431

F.2d 22, 24 (3rd Cir. 1970). Second, the court must then weigh whether transfer would best serve the interests of convenience and justice. *See Jumara*, 55 F.3d at 879. The burden rests on the defendant to show that transfer is appropriate at each step, *id.* (citing *Shutte*, 431 F.2d at 22), and, "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail" *Shutte*, 431 F.3d at 25 (citing *Owatonna Manufacturing Co. v. Melore Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

## IV. DISCUSSION

### A. The Propriety of the Transferee Forum

Under 28 U.S.C. § 1404(a), the proposed transferee forum must be one in which the action might have originally been brought. 28 U.S.C. § 1404(a). Accordingly, the court may only grant Ford's motion to transfer to the Eastern District of Michigan if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction in the action. *See* 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

As noted, Ford maintains its principal place of business in Dearborn, Michigan, which is located in the proposed transferee forum. In addition, Joao Control is currently litigating a suit against Ford in the Eastern District of Michigan,[1] that was originally filed in January of 2012, and, according to Ford, involves the same family of patents as those asserted here. (*Id.* at 1.) Therefore, it is clear that each party has sufficient minimum contacts with the proposed transferee forum to provide that district court with personal jurisdiction and the parties do not dispute this fact. *See* D.I. 15 at 9; 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the

[1] As the parties explain, Joao Control's action against Ford in the Eastern District of Michigan was originally filed in California and was transferred to the Eastern District of Michigan on September 6, 2012. (D.I. 11 at 4.) Ford recites that, after hearing argument on the matter, Judge David O. Carter transferred the action from the Central District of California because the center of activity related to the patent infringement was Michigan, where the products were designed. (*Id.* (citing Ex. J at 8:9-11:5).)

judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); *see also* §§ 1391(b)(1), 1391(d); FED. R. CIV. P. 4(k). In addition, as a patent dispute, the Eastern District of Michigan would have subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1338(a), which provides district courts with original jurisdiction in such matters. *See* 28 U.S.C. § 1338(a). Thus, in view of the foregoing, the court finds that this action could have been brought originally in the proposed transferee forum and will proceed to the second step of the transfer analysis.

**B. The *Jumara* Analysis**

Next, the court must consider whether transferring this action to the Eastern District of Michigan would serve the interests of convenience and justice. *See Mitel,* 2013 WL 1856457, at *5. The Third Circuit requires courts considering a transfer motion to perform a case-by-case analysis, rather than to apply a "definitive formula." *See Jumara*, 55 F.3d at 879. This assessment should take into account the various public and private interests protected and defined in § 1404(a). The private interests may include:

> plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80. Importantly, the *Jumara* analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive. *See id.* at 879. The court addresses each of these "*Jumara* factors" in turn.

1. Private Interest Factors

a. *The Plaintiff's Forum Preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Id.* at 879. Ford asserts that Joao Control's choice of forum should be entitled to little weight, because it has chosen to litigate in Delaware, which is not its home turf and is a state with little, if any, connection to the action. (D.I. 11 at 1-2.) In response, Joao Control maintains that its choice of forum is entitled to "heightened deference" because it selected the state in which it was formed, making this district its "home turf." Therefore, Joao Control argues, its choice of forum should not be lightly disturbed. (D.I. 15 at 2-3.)

Joao correctly notes that, under the § 1404(a) analysis, the plaintiff's choice of forum is typically afforded heightened deference, particularly where the plaintiff has chosen to litigate on its home turf. *See AIP Acquisition LLC v. iBasis, Inc.*, No. 12–616 GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012); *see also Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" (citation omitted)). Here, both Joao Control and Ford chose to avail themselves of the "advantages of Delaware corporate law" and to the "risk of suit in Delaware" by forming or being incorporated there, leaving Ford with an "uphill battle" to demonstrate inconvenience. *See Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004); *see also Mitel*, 2013 WL 1856457, at * 5. However, as the court recently explained in *Smart Audio Technologies, LLC v. Apple, Inc.*, the deference afforded to a

plaintiff's choice of forum is shown primarily by placing the initial burden on the movant to demonstrate that the balance of convenience "strongly" favors transfer. *See Smart Audio Technologies, LLC v. Apple, Inc.*, C.A. No. 12-134-GMS, 2012 WL 5865742, at *4 (D. Del. Nov. 16, 2012). Specifically, as an individual *Jumara* factor, a plaintiff's forum preference receives enhanced weight only where it has chosen to file suit on its home turf or can identify a rational and legitimate reason for litigating in Delaware. *See id.*

Here, Joao Control was formed in Delaware and its forum choice is, therefore, entitled to some measure of deference. Importantly, however, while courts "ha[ve] observed that a corporate entity's state of incorporation is part of its 'home turf,'" it is not dispositive in the analysis. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Rather, "[t]he court . . . recognizes that, when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than . . . paramount consideration." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2012 WL 105323, at *3 (D. Del. Jan. 7 2013); *see also In re Link_A_Media*, 662 F.3d at 1223 (using the term "home forum" to refer to the jurisdiction in which a party is physically located and noting that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference"). Therefore, because Joao Control chose to litigate in the forum where it was formed, rather than the forum where its principal place of business is located, its choice is entitled to less deference than it would typically receive in this analysis. *See AIP*, 2012 WL 5199118, at *3. Consequently, the court weighs this factor against transfer and is accorded heightened, but not maximum, deference as an individual *Jumara* factor.[2]

[2] The court finds that Joao Control has identified "rational, legitimate reasons" for litigating in Delaware, including that both are formed and incorporated under Delaware law, Delaware is proximate to the headquarters of both parties, and infringing activity has taken place in this District. Thus, the court concludes that Joao Control's choice of forum is entitled to heightened deference in the transfer analysis. (D.I. 15 at 8.)

b. *The Defendant's Forum Preference*

The second private interest factor is the defendant's choice of forum. *Jumara*, 55 F.3d at 879. Ford maintains that it would prefer to litigate this action in the Eastern District of Michigan because: (1) the parties are currently litigating a case involving the same family of patents in that district and, therefore, judicial efficiency and economy would be achieved by transfer; (2) the majority of party and non-party witnesses are located in the proposed transferee forum; (3) the majority of relevant evidence is located in Michigan; and (4) the primary acts giving rise to this suit occurred in the Eastern District of Michigan. While the court will address Ford's reasons for seeking transfer in its examination of the other private interest *Jumara* factors below, Ford has clearly expressed a preference for litigating in the Eastern District of Michigan. The court finds Ford's reasons for seeking transfer to be legitimate and rational. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. Jan. 23, 2012). Thus, this factor weighs in favor of transfer.

c. *Whether the Claim Arose Elsewhere*

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7. Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral.

The court has recognized, however, that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Smart Audio Techs.*,

2012 WL 5865742, at *7 (quoting *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)); *see also Intellectual Ventures*, 842 F. Supp. 2d at 755 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." (quoting *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

Here, Ford contends that, because it has its principal place of business in the Eastern District of Michigan, the employees who developed the accused system and all documents, systems, and evidence related to the system are in Dearborn. (D.I. 11 at 8-9.) While it is true that Ford is a national corporation and active in every state such that, typically, there is no implication of local interests as demarcated by the loci of corporate activity, this factor weights slightly in favor of transfer. Specifically, because the patent infringement claims arise from infringing products that were designed and manufactured in a single, discrete location, this is weighed on the transfer side of the balance. *See Mitel*, 2013 WL 1856457, at *4.

d. *The Convenience of the Parties*

The court must also determine whether the proposed transferee forum would prove more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this examination, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitel*, 2013 WL 1856457, at *4 (quoting *Smart Audio Tech.*, 2012 WL 5865742, at *7 (internal quotation omitted)). To this end, the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

Ford suggests that litigating this action in the Eastern District of Michigan is more convenient for both parties because: (1) the parties are already litigating a matter involving related patents in that district; (2) Joao Control does not have a connection to either Delaware or Michigan and instead operates out of Yonkers, New York for the sole purpose of prosecuting patents; (3) Ford operates out of the Eastern District of Michigan and, therefore, all relevant witnesses—both party and non-party—and all evidence, books, and records are located in Dearborn; and (4) no evidence or witnesses are located in Delaware. (D.I. 11.) Conversely, Joao Control asserts that this factor does not weigh in favor of transfer because "[g]iven the size of Ford, and its finances, it is convenient for it to travel to Delaware for litigation purposes" and it would be inconvenient for Joao Control to travel to Michigan, such that transfer of the action would place the burden solely on it. (D.I. 15 at 10-11.)

While Joao Control correctly notes that the "relative ability of each party to bear [litigation] costs in light of its size and financial wherewithal" is a key consideration in the court's "convenience of the parties" analysis, it is not dispositive and is, instead, assessed in conjunction with the parties' physical location and associated logistical and operational costs. *Mitel*, 2013 WL 1856457, at *4 (quoting *Smart Audio Tech.*, 2012 WL 5865742, at *7 (internal quotation omitted)). While the court has not been presented with enough information to fully assess the relative financial resources of the parties, it appears that each has sufficient financial resources to litigate in either forum.

This conclusion is further supported by the information that is detailed in the parties' briefing. Specifically, Ford is a Michigan-based corporation that operates throughout the country. Joao Control, on the other hand, appears to consist solely of the one named inventor of the patents-in-suit and does not produce or sell goods or services. Joao Control, as noted, operates its principal

place of business in Yonkers, New York, and originally filed suit against Ford in California, in what is now the Eastern District of Michigan action. The court finds it reasonable to assume that if Joao Control had the financial resources to travel from New York to California, it has the resources to litigate in Michigan, approximately two thousand miles closer.

Importantly, however, Ford is incorporated in Delaware and, therefore, has submitted to suit in this District. Indeed, "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I*, 842 F. Supp. 2d at 756; *see also Linex Techs., Inc.*, 2013 U.S. Dist. LEXIS 1924, at *15; *AIP Acquisition*, 2012 WL 5199118, at *4 ("[T]he court finds it significant that [the defendant] is a Delaware corporation and has necessarily consented to suit in this jurisdiction."). The decision to incorporate in Delaware suggests that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be in this case. Thus, having considered each element of this *Jumara* factor, the court concludes that it weighs slightly in favor of transfer.

e. *The Convenience of the Witness*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. Ford argues that the convenience of the witnesses will be best achieved by transferring this action to the Eastern District of Michigan. Specifically, Ford details that: (1) the eight Ford employees with primary responsibility for developing the Ford SYNC system, which includes the features identified in the complaint, are located in Michigan (D.I. 11 at 8); (2) an employee at Inrix, Inc., the third-party that developed one of the features of the SYNC system in cooperation with Ford, will be a necessary witness and is located and works in the proposed transferee forum (*id.*); (3) "[t]here are

numerous key individuals located in Michigan related to the design and development of the Ford SYNC system and the features identified in the complaint" (*id.*); and (4) the attendance of witnesses could be compelled in Michigan, due to proximity and subpoena power, but not in Delaware (*id.* at 12). Conversely, Joao Controls notes that the convenience of witnesses factor should only be considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." (D.I. 15 at 11 (citing *Jumara*, 55 F.3d at 879).) Thus, Joao Control argues that because Ford has not identified "any party witness that would be unavailable for trial in Delaware" and the Inrix witness would be available for deposition or by subpoena power in Delaware because Inrix is a Delaware corpoation, this factor should be neutral. (*Id.* at 11-12.)

As an initial matter, the court notes that "witnesses employed by the parties are not considered by a court conducting a venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial." *Nilssen v. Everbrite, Inc.*, No. 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001). Here, it appears that most, if not all, of the witnesses that Ford identifies are Ford employees with the exception of the Inrix employee. Because Ford will be required to produce these employees, the court does not factor them into the analysis of this factor.

With regard to the Inrix employee, it appears that Joao Control overstates the moving party's burden of demonstrating that a third-party witness will be unavailable or unwilling to travel to Delaware. In this assessment, the court does not require such a clear statement—it is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power. *See Smart Audio Techs*, 2012 WL 5865742, at *8 ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena."); *see also AIP Acquisition*, 2012 WL

5199118, at *4; *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008). Here, while it is true that the Inrix employee may submit to a deposition if the case were to proceed in Delaware, he would be within the court's subpoena power in the Eastern District of Michigan. Ford does not specifically identify additional third-party witnesses in its briefing, but does note that such witnesses exist in the Eastern District of Michigan and would be outside the subpoena power of the court in this District should transfer be denied. However, because Ford identifies only one third-party witness, the court regards this factor as neutral in the transfer analysis.

f. *The Location of Books and Records*

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in an alternative forum)." *Jumara*, 55 F.3d at 879. Ford maintains that, because its principal place of business is in Dearborn, Michigan, and the accused features were designed and engineered in the proposed transferee district, this factor should weigh in favor of transfer. Specifically, Ford notes that: (1) the eight Ford employees with the primary responsibility for developing the Ford SYNC system, which includes the features identified in the complaint, are in Michigan (D.I. 11 at 8); (2) because these eight employees developed the system in Michigan, "all of the documents, computer systems[,] and other evidence pertaining to the features of SYNC identified are also located [there]" (*id.*); (3) its "engineering, design development, and marketing decisions are made in Michigan" (*id.*); (4) one of the features of the SYNC system was developed by third-party, Inrix, also located in Michigan (*id.*); and (5) Dearborn, Michigan is its "principal place for research, development production, testing[,] and marketing" (*id.* at 8-9).

Notably, Joao Control acknowledges in its briefing that, although "today's technology and the routine exchange of discovery using electronic discovery databases, including the exchange of documents, records and things in electronic form" is easier, this "factor would slightly favor [d]efendant's request for transfer to Michigan." (D.I. 15 at 10.) The court agrees. The court has recognized that the "bulk of the relevant evidence" in cases such as this often comes from the accused infringer, such that the location of the defendant's documents can favor transfer. *See Smart Audio Techs*, 2012 WL 5865742, at *9. Indeed, as Joao Control correctly notes, while technological advancements have significantly reduced the weight to be accorded this factor, importantly, "the court may not simply ignore the location of relevant books and records." *AIP*, 2012 WL 5199118, at *4; *see also See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224. Thus, because Ford's principal place of business and much, if not all, of its materials relevant to the accused technology are located in the Eastern District of Michigan, this factor weighs slightly in favor of transfer.

2. Public Interest Factors

The parties limit their briefing on the public interest factors to: (1) "practical considerations that make the trial easy, expeditious, or inexpensive"; and (2) "local interest in the controversy." (D.I. 11; D.I. 15; D.I. 18.) Therefore, because the parties are in agreement that all other factors are neutral, the court will not address the factors of: enforceability of the judgment; public policies of the fora; the court's familiarity with relevant state law; or relative administrative difficulty, as that relates to such issues as court congestion.

*a. Practical Considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Ford contends that transferring this action

to the Eastern District of Michigan would serve the public interest of practical considerations because: (1) judicial efficiency will be gained by transferring this action to the district where a related litigation is pending (D.I. 11 at 15 (citing *Ivoclar Vivaden AG v. 3M Co.*, No. 11-1183, 2012 WL 2374657, at *13 (D. Del. Jun. 22, 2012)); (2) cases involving the same patent family pending in another forum should be transferred to that other forum (*id.* at 16 (citing *SOC-USA, LLC v. Office Depot, Inc.*, No. 09-80545, 2009 WL 2365863, at *1 (S.D. Fla. Jul. 30, 2009)); and (3) for many of the reasons detailed in connection with its "convenience of parties" and "convenience of witnesses" factors, it will prove less expensive to litigate in the proposed transferee forum, as the vast majority of the witnesses and evidence is located there (*id.* at 17-18).

In response, Joao Control argues that practical considerations favor keeping the case in Delaware because this action is more advanced than the Michigan action. Specifically, Joao Control details that Ford's motion to dismiss is fully briefed in this district, but briefing only recently commenced in Michigan when it submitted its Answering Brief. Joao Control also notes that, admittedly, both actions are in their early stages, but maintains that transfer is inappropriate because it would prove inconvenient for it. (D.I. 15 at 12.) The court notes that, as of the date of this Memorandum and Order, briefing on Ford's motions to dismiss has been completed in both districts and the Eastern District of Michigan has scheduled a scheduling teleconference in its action for the end of August 2013, such that the actions are nearly parallel in their litigation timing. Thus, the court finds Joao Control's argument unpersuasive on this point.

Indeed, in consideration of the parties' arguments and the relevant law, the court largely agrees with Ford that the practical considerations of having an easy, expeditious, and inexpensive trial weighs slightly in favor of transfer. Specifically, while Ford has identified only one third-party witness and, therefore, has failed to establish that the private interest factor "witness

convenience" favors transfer, it has established that its employees, engineering and design facilities, potentially relevant documentation, and other relevant evidence are located in the Eastern District of Michigan. While the court did not take into consideration issues of economic cost and logistical convenience with respect to potentially relevant Ford employees when assessing "witness convenience," it can consider such factors here in determining the balance of "practical considerations." Here, because neither party has facilities, offices, or employees in Delaware, the court finds that the practical considerations of efficiency, expense, and ease favor transfer.

This conclusion is further supported by the facts detailed in the private interest factor "convenience of the parties" discussion above. While the court found that factor neutral because Ford is incorporated in Delaware and, therefore, cannot argue that it is an inconvenient forum, the underlying facts discussed in that section do recommend transfer as the court finds that the aggregate litigation costs would be reduced by litigating in Michigan. Specifically, both parties are currently litigating in the Eastern District of Michigan and appear to have the financial resources to do so. The court finds that it would prove more convenient for both to litigate in Michigan than to conduct litigation in two districts, particularly when neither have a principal place of business in Delaware and will have to travel to this district should the case remain here.

Finally, the court agrees with Ford that transferring this action will also prove expeditious and efficient from a judicial perspective, because this litigation involves patents related to the patents-in-suit in the Eastern District of Michigan. Specifically, the patents-in-suit resulted from continuation applications[3] and share essentially the same specification with the Michigan patents. Joao Control's description of the purported invention is identical for the Michigan patents and the

[3] In January 2012, Joao Control filed suit against Ford for infringement of the '405 and '130 Patents in the Central District of California. The '130 Patent is based on a continuation application of the '405 Patent and, therefore, the specification and the priority claim of the '130 Patent are based on the '405 Patent. (D.I. 11 at 3; *see also id.* at 4-5.)

patents-in-suit and both complaints are directed to the same accused product—the Ford SYNC System. (D.I. 11 at 2 (citing D.I. 1 at ¶¶ 5, 12, 19; Ex. P. at ¶¶ 8, 14).) Notably, Joao Control sought to amend its complaint in the Eastern District of Michigan action to add the claims that it raises here, but chose instead to file this litigation in the District of Delaware when Ford stated that it would not agree to Joao Control's pleading amendment unless Joao Control limited its case to ten claims. (D.I. 11 at 1-2; D.I. 18 at 4.) It appears from this proposed amendment that Joao Control agreed that the patents-in-suit in Michigan and those here are at least tangentially related.[4] Thus, view of the foregoing, the court concludes that the "practical considerations" factor weighs in favor of transfer.

a. *Local Interest in the Litigation*

The transfer analysis also requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Joao Control argues that there is a local "interest in resolving disputes between Delaware businesses locally" because "[a]ny judgment issued by the Delaware Court are enforceable against the [p]arties because they are Delaware businesses." (D.I. 15 at 13.) Likewise, Ford identifies a local interest in the litigation in Michigan based on the fact that the "Eastern District of Michigan has a strong interest in deciding disputes that arise within its boundaries" and, in fact, has "far superior interests in deciding this dispute

[4] In reaching its finding here, the court notes that it rejects Joao Control's argument that Ford "waived its right" to bring a motion to transfer in this action because Ford rejected its requests to amend its complaint in the Eastern District of Michigan to add the claims at issue here. (D.I. 15 at 6.) Specifically, Joao Control contends that "Ford, through its counsel, made it unequivocally clear that it did not want these three patents-in-suit brought into the Eastern District of Michigan and the Michigan litigation. Such clear and knowledgeable actions, and the refusal to agree with Plaintiff to litigate these three patents in that forum, constitutes a waiver of any arguments to now transfer this case to Michigan." (*Id.*) To the contrary, it is clear that Ford did not reject Joao Control's request to amend outright, and, instead, indicated that it would agree to amendment if Joao Control limited its suit to ten claims. Notably, Ford's request was consistent with a ten claim requirement that had previously been ordered by the California court prior to transfer. (D.I. 18 at 4.) Ford has a right to seek limitation on the number of claims asserted and Joao Control could have filed a motion with the court seeking leave to amend its pleadings. Therefore, the court disagrees with Joao Control and finds that Ford has not waived its right to file a motion to transfer in this action.

when compared to Delaware." (D.I. 11 at 19.) The court, however, is unpersuaded by these arguments. As Joao Control recognizes, because "[t]he nature of patent litigation is national, especially when dealing with infringement by a large, national corporation such as [Ford]," the factor is neutral. The court agrees.

As noted in recent transfer memorandum opinions, the court concurs with the position Judge Robinson expressed on this issue in *Helicos Biosciences Corp. v. Illumina, Inc.*, wherein she explained:

> [P]atent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by courts of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were establish to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

858 F. Supp. 2d 367, 375 (D. Del. 2012). Thus, this factor is typically neutral in the context of patent litigation because patent issues usually "do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2009).

The court again reaches this conclusion here and is not convinced that either district has a local interest in this action that would weigh in favor of transfer. To the contrary, while there may well be an "interest" in both jurisdictions for the reasons the parties advance, the court disagrees that that interest represents a "local controversy" in the context relevant here. This action is governed under federal law, brought against a national corporation, and concerns a product available nationally. Therefore, the court finds that this action implicates a national, rather than a local, controversy, rendering this public interest factor neutral.

**C. Transfer Analysis Summary**

Considering the *Jumara* factors as a whole, the court concludes Ford has met its burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Joao Control's forum preference weighs against transfer and, as the court explains above, that preference does not warrant maximum deference in this case. On the other hand, several factors counsel transfer: Ford's choice of forum; the location where the claims arose; the location of relevant books and records; and practical considerations.

## V. Conclusion

For the reasons discussed above, the court will grant Ford's Motion to Transfer (D.I. 10) this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

Dated: August 21, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOAO CONTROL & MONITORING SYSTEMS, LLC, Plaintiff, v. FORD MOTOR COMPANY, Defendant. | C.A. No. 12-cv-1479 (GMS) |

**ORDER**

At Wilmington, this 21th day of August, 2013, consistent with the Memorandum Opinion issued this same date, IT IS HEREBY ORDERED THAT:

1. Ford's Motions to Transfer Venue to the Eastern District of Michigan (D.I. 10) is GRANTED; and

2. The above-captioned action is transferred to the U.S. District Court for the Eastern District of Michigan.

CHIEF, UNITED STATES DISTRICT JUDGE